## Case No. 6,301.

### HEARN v. NEW ENGLAND MUT. MARINE INS. CO.

[3 Cliff. 318.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1870.

MARINE INSURANCE — DEVIATION IN VOYAGE — USAGE—EVIDENCE OF, TO VARY CONTRACT.

1. Policies of insurance are regarded as commercial instruments, and are liberally construed; but no evidence of any usage or custom can be admitted to vary or explain their terms when precise and clear.

2. The voyage was described in the policy as follows: "At and from Liverpool to port in Cuba, and at and thence to port of advice and discharge." Held, that "port" cannot be construed to mean "ports," or "port or ports," and the going to a second port in Cuba constituted a deviation.

3. Parol evidence as to the usage of trade is admissible relating to a written contract in two classes of cases: Where the evidence is offered to prove that the words used in the contract are employed in a peculiar sense in the particular trade to which the contract relates; where the purpose of the evidence is to annex incidents to the contract in matters upon which the contract is silent.

4. In the latter case, however, the peculiar meaning which it is proposed to attach to the words must not either expressly or by implication vary the terms of the written instrument.

5. Such evidence is admissible to define what would otherwise be indefinite and obscure, and always with a view to give expression to the presumed intention of the parties.

6. Under the policy in this case, parol evidence to the effect that it is the usage for vessels bound from Liverpool and back, to discharge at one port and then to proceed to a second port for a return cargo, was not admissible to avoid the effect of a deviation.

7. If admitted, it would extend the voyage and increase the risk beyond what the language employed warrants the court in believing the parties had in contemplation.

[This was an action of assumpsit by George Hearn against the New England Mutual Marine Insurance Company.]

B. R. Curtis and Walter Curtis, for plaintiff.

Hutchins & Wheeler, for defendant.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. Policies of insurance against marine risks are liberally construed, as they are regarded as commercial instruments in the strictest sense. Such instruments, where their terms are ambiguous, may be explained by parol evidence of the usages of trade; but where the terms employed are clear and precise in themselves, the principles which govern their construction do not vary from those which are applicable to other mercantile instruments, and no evidence of any usage or custom can be admitted to explain, alter, or impair the terms of the contract as made by the parties. Oelricks v. Ford, 23 How. [64 U. S.] 63; Bliven v. Screw Co., Id. 431; 1 Arn. Ins. (2d Am. Ed.) 64.

Insurance was effected in this case at Boston on the 9th of May, 1866, in the sum of five thousand dollars "on charter of the barque Maria Henry, at and from Liverpool to port in Cuba, and at and thence to port of advice and discharge in Europe." When the application for the policy was made, the barque was at Liverpool, and it appears that she loaded at that port with a cargo of coal, and, having been regularly cleared from that port, proceeded thence without difficulty on her outward voyage to the port of St. Jago de Cuba, where she discharged her outward cargo, and that, having discharged her outward cargo, she sailed thence to Mansanilla, another port in Cuba, and there took on board a cargo of the products of the island, and on the 13th of September sailed thence for Europe via Falmouth for orders, and on the 18th of the same month was totally lost on her homeward voyage by perils of the sea. Due notice of the loss was given to the defendants, and the loss is admitted as alleged, but the defendants refused to pay the amount insured, or any part of the same, upon the ground that the barque, without any justifying cause, departed from the prescribed course of the voyage as described in the policy on which the action is founded. Reference was made in that proposition to the fact that the vessel, after she went to St. Jago de Cuba and there discharged her outward cargo, proceeded thence to Mansanilla for a return cargo before she sailed for Europe; but the plaintiff contended that going to a second port in Cuba did not constitute a deviation, as it is the usage for vessels bound from Liverpool and back, to discharge at one port and then to proceed to a second port for a return cargo. Nothing of the kind is expressed in the policy of insurance, if the words are to be taken in their ordinary signification; but the theory of the plaintiff is that such is the usage of the trade, and he insisted that parol evidence of such usage was admissible, and that the language of the policy should, in view of that evidence, be construed as conferring that right. Deviation

in marine insurance is understood to mean a voluntary departure without necessity or reasonable cause from the regular and usual course of the specified voyage insured, which in this case was to port in Cuba, and at and thence to port of advice and discharge, as plainly and explicitly expressed in the policy. Whenever a deviation of that kind takes place, the voyage is determined and the underwriters are discharged from any responsibility. Park, Ins. 294; Elliot v. Wilson, 4 Brown, Parl. Cas. 470.

Different language is sometimes employed, as where the voyage is described as one from the port of departure to Cuba or to the island of Cuba, but the terms of the policy in the case before the court are "at and from Liverpool to port in Cuba, and at and thence to port of advice and discharge," showing a contract complete in itself, and one expressed in plain, clear, and unambiguous language, employing no terms of art nor any word or phrase of doubtful meaning. Unambiguous as the language is, the court cannot impute to the parties any other intention than that which they have expressed, as the court must do, to hold that port means ports, or port or ports, or to a port of discharge, and also to a second port for a return cargo and at and thence "to port of advice and discharge." Precisely the same question was presented in the case of Brown v. Tayleur, 4 Adol. & E. 241, and the court held that the word "port" in such a policy could not be construed to mean "ports," nor "port or ports," and that the going to a second port in such a case constituted a deviation, the judges giving their opinions seriatim, and all concurring in the conclusion. Sea Ins. Co. v. Gavin, 4 Bligh (N. S.) 578, 2 Dow & C. 125. Evidence of usage, such as the plaintiff assumes in argument that he has offered in this case, if admissible for any legitimate purpose, must be expected to have the effect, and, if fully believed, ought to have the effect, to induce the court to decide that a policy of insurance covering a voyage to a single port in Cuba may be construed, and if the evidence of such usage is full to the point, must be construed, to cover not only that voyage, but also a voyage to a second port for a return cargo, even though it be necessary in order to accomplish the purpose, to make a coasting voyage to the opposite side of that large and highly commercial island. Suppose, for example, the master in this case had gone to Matanzas, on the north side of the island, as his port of discharge, he might, under the theory of the plaintiff, have afterwards gone to Trinidad for a return cargo, which is on the southern side of the island. Every policy of insurance, if properly drawn, describes the place of the ship's departure, and also the place of destination, and the reason why a deviation discharges the underwriter is, that if the voyage is changed after the ship sails, the voyage becomes a different one, and not that against which the insurer has undertaken to indem-

nify. But in the case supposed, the insurer would be held responsible for a voyage from Matanzas to Trinidad, though no such voyage is mentioned in the policy.

Custom or usage is sometimes supposed to be admissible to show that the parties to a written instrument had something in their contemplation more than is expressed in what they have reduced to writing; but Lord Denman well said, in the case of Trueman v. Loder, 11 Adol. & E. 589, that the cases go no further than to permit the explanation of words used in a sense different from their ordinary meaning, or the addition of known terms not inconsistent with the written contract. Extrinsic evidence of custom and usage is doubtless admissible in certain cases, where the transaction is of a commercial character, to annex incidents to written contracts in respect to which the contracts are silent, but such evidence cannot be properly received if it is inconsistent with the terms of the written instrument, whether such inconsistency appears by the express terms of the written contract or by reasonable implication from the same as applied to the subject-matter. Hutton v. Warren, 1 Mees. & W. 475; 1 Smith, Lead. Cas. 387. Apply that rule, and it is clear that evidence of usage, if offered to show that the barque might go to one port to discharge and to a second for a return cargo, ought not to be admitted, as it is plainly inconsistent with the written contract, which is to port and at and thence to the return port.

Few cases are to be found where the rule under consideration is better stated and explained than in the case of Spartali v. Benecke, 10 C. B. 222, in which the opinion is delivered by the chief justice of the common pleas. He admits that evidence as to the usages of trade is admissible in two classes of cases: (1) Where the evidence is offered to prove that the words in which the contract is expressed, in the particular trade to which the contract refers, are used in a peculiar sense, and different from what they ordinarily import. (2) That the evidence is also admissible for the purpose of annexing incidents to the contract in matters upon which the contract is silent, but he remarks, what it is important to observe, that both these rules are subject to the limitation or qualification that the peculiar sense or meaning which it is proposed by the evidence to attach to the words of the contract must not vary or contradict either expressly or by implication the terms of the written instrument. Such evidence is admitted for the purpose of defining what would otherwise be indefinite, or to interpret a peculiar term, or to explain what is obscure, or to ascertain what is equivocal, or to annex particulars and incidents which, though not mentioned in the contract, were connected with it, or with the relations growing out of the same; but in all these cases the evidence is admitted with a view of giving effect as far as can be done

to the presumed intention of the parties. Humfrey v. Dale, 7 El. & Bl. 273; Myers v. Sarl, 3 El. & El. 318.

Proof of usage may be admitted to explain a word, term, or phrase of doubtful or equivocal meaning, but it cannot be admitted to add to a word of a known and certain signification a meaning beyond what it plainly imports for the purpose of adding a new and different obligation to a written contract. Phillipps v. Briard, 1 Hurl. & N. 25. Usage may be relied on, says Lord Campbell, in the case of Hall v. Janson, 4 El. & Bl. 510, to show the sense in which an expression found in a written contract is used in a particular trade, but to let in verbal evidence of a usage for the purpose of contradicting and nullifying an express written contract would be contrary to all principle, and has been forbidden as often as the attempt has been made. Commercial usage, said Judge Story, in the case of The Reeside [Case No. 11,657], can never be resorted to, to control or vary the positive stipulations in a written contract, and a fortiori not to contradict them. An express contract of the parties, he held, was always admissible to supersede, vary, or control a usage or custom, but he denied in the most explicit terms that a written contract could be controlled, varied, or contradicted by a usage or custom. Three decisions of the supreme court, delivered within the last twelve years, affirm the same rule. Bliven v. Screw Co., 23 How. [64 U. S.] 431; Insurance Co. v. Wright, 1 Wall. [68 U. S.] 470. "When we have satisfied ourselves," said Mr. Justice Miller, in the last case cited, "that the policy is susceptible of a reasonable construction on its face without the necessity of resorting to extrinsic aid, we have at the same time established that usage or custom cannot be resorted to for that purpose." 2 Greenl. Ev. § 251. Omission (in a contract), say the court, in the case of Thompson v. Riggs, 5 Wall. [72 U. S.] 679, may be supplied in some cases by the introduction of such proof, but it cannot prevail over or nullify the express provisions and stipulations of the contract. So where there is no contract, usage will not make one, as it can only be admitted either to interpret the meaning of the language employed by the parties in the absence of express stipulations, or where the meaning is equivocal or obscure.

Decided cases also of high authority and of recent date from the reported decisions of the state courts may be referred to, in which it is held that the clear and explicit language of a contract, mercantile or otherwise, cannot be enlarged or restricted by proof of usage or custom. Strong doubts are expressed by the court in the case of Seccomb v. Provincial Ins. Co., 10 Allen, 314, whether in any case it would now be deemed to be competent to offer evidence to show that a description of a voyage in a policy which is susceptible of a clear and definite exposi-

tion in conformity to the interpretation of the words as established by adjudicated cases, has another and different meaning by mercantile usage from that which has been so recognized and settled. Mercantile usage, say the court in that case, in order to be received as explanatory or in aid of the exposition of a policy of insurance, must not on the one hand tend to increase materially the risk assumed by the insurers, nor on the other hand to deprive the assured of the indemnity which the words of the contract fairly interpreted secure to him in case of loss. Examined in the light of these rules, as given substantially in the case last cited, the court is of the opinion that the usage relied on by the plaintiff, if the evidence offered showed that it exists as he supposes, would not be admissible to avoid the effect of the deviation, as, if admitted, it would enlarge the voyage insured as described in the policy, and would materially increase the risk cast upon the underwriters beyond what the language employed warrants the court in believing they had in contemplation when the contract was executed. Dickinson v. Gay, 7 Allen, 36; Hone v. Mutual Safety Ins. Co., 1 Sandf. 149.

Authorities to show that evidence, even of general usage, is never admissible to contradict the settled rules of law cannot be necessary, as they are all one way from the earliest period to the present time; and that remark is just as applicable to a commercial contract as to one where the construction of the instrument is governed by the principles of the common law. Rankin v. American Ins. Co., 1 Hall, 619; 2 Pars. Mar. Law, 58; 1 Duer, Ins. 177–233; Edie v. East India Co., 2 Burrows, 1216; Homer v. Dorr, 10 Mass. 26; Frith v. Barker, 2 Johns. 327. Parol evidence of usage may be admissible to explain what is doubtful, but it is never admissible to contradict what is plain. Blackett v. Assurance Co., 2 Cromp. & J. 249; Cox v. Heisley, 19 Pa. St. 247. Incidental matters, it is said, may be supplied by usage where the policy is silent, but the policy in this case is not silent as to the matter in question, as the description of the voyage is plain and unambiguous,—on charter at and from Liverpool to port in Cuba, and at and thence to port of advice. Vandervoort v. Smith, 2 Caines, 160; 1 Pars. Shipp. & Adm. 83; 2 Phil. Ev. (Ed. 1859) 789; Steward v. Scudder, 24 N. J. Law, 96; Foley v. Mason, 6 Md. 37. Where the contract is clear, certain, and distinct, it is not subject to modification by proof of custom. Such a contract disposes of all customs and usages by its own terms, and by its terms alone is the conduct of the parties to be regulated, and their liability to be determined. Simmons v. Law, *42 N. Y. 219; Westcott v. Thompson, 18 N. Y. 367.

Certain cases are cited by the plaintiff, which, it is suggested, support the opposite theory, but when carefully examined it will

be found that they do not have any such tendency. Warre v. Miller, 4 Barn. & C. 538; Cruickshank v. Janson, 2 Taunt. 301; Dickey v. Ins. Co., 7 Cranch [11 U. S.] 327. At and from Grenada to London was the description of the voyage in the first case, and at and from Jamaica in the second, and at and from Trinidad in the case decided in the supreme court. Evidence was introduced in the first case showing that there was but one custom-house for the whole island of Grenada, and inasmuch as the voyage insured was at and from Grenada and not at and from a port in Grenada, the court decided that the island must be considered as all one place, and that there was no deviation, although the vessel went to three places to discharge. Nothing different is asserted in the second case, and in the third the court decided that where the voyage as described in the policy is "at and from an island," the vessel may sail from port to port to take in cargo, but the decision has no application to the case at bar, as the voyage described in this case is to port in Cuba and at and thence to port of advice, which shows that the two cases are in no respect analogous. Underwriters are presumed to be acquainted with the course of the trade they insure and with its peculiarities, and the court decided, in the case of Noble v. Kennoway, 2 Doug. 510, that in that trade, which was the Labrador trade, greater delay in landing the cargo was customary than would be justifiable in most other adventures, but it is not perceived that the case has much bearing upon the question under consideration. Vallance v. Dewar, 1 Camp. 503. Undoubtedly, evidence of usage was also admitted to explain the terms of the contract in the case of Salvador v. Hopkins, 3 Burrows, 1707, as suggested by the plaintiff, but the motion for new trial was overruled and the decision of the court placed expressly upon the ground that the evidence offered and admitted was not repugnant to the contract. Other cases of an analogous character are also referred to, where evidence of usage was admitted to explain some ambiguous phrase in the terms of the contract to which the same answer may be given, that the evidence admitted did not contradict what was in writing. Uhde v. Walters, 3 Camp. 16; Hyde v. Willis, Id. 202. Such evidence was also admitted in the case of Gracie v. Marine Ins. Co., 8 Cranch [12 U. S.] 75, to show the boundaries and extent of a commercial port named in the policy as the port of destination, and it is quite clear that the ruling was correct, as the evidence tended to explain and not to contradict the terms of the policy, and a like ruling is found in the case of Lowry v. Russell, 8 Pick. 362, where the court overruled the objection to the evidence expressly upon the ground that it did not contradict the terms of the bill of lading. Reliance is also placed upon the case of Bulkley v. Protection Ins. Co. [Case

No. 2,118]; but the case was decided wholly irrespective of any such question, as the evidence introduced failed to show that there was any such usage as the plaintiff supposed. The policy in that case described the voyage as from Ocrocoke to St. Bartholomew or St. Thomas, and at and from thence to Tobasco, and the court, and rightly, held that it did not authorize the assured to go to both ports, that he might go to either at his election, and that, having first stopped at the island of St. Bartholomew and afterwards proceeded to St. Thomas, it was a deviation. "That the policy only covers a voyage to one or the other of those islands," said the judge, "cannot admit of a doubt," and if the sentence stopped there the case would be consistent with the recent decision of the supreme court, and all the other modern decisions upon the subject, but he adds, in continuation of the same sentence, "unless justified by usage," leaving it to be inferred that his opinion was that the evidence of usage would be admissible to incorporate a different meaning into the contract. But he could hardly have intended what the words imply, as in the next sentence he says that "it was at the election of the assured to go to either, to the one or the other, but the language of the policy is too plain and explicit to admit of a construction that it authorized a voyage to both," in which latter view we entirely concur.

Support to the views of the plaintiff cannot be derived from the case of De Peyster v. Sun Mutual Ins. Co., 19 N. Y. 276, as the court held, irrespective of usage, that the three additional ports allowed by the addition made to the policy, included ports on the main, and referred to ports to be touched before finally leaving the main for the return voyage. Viewed in the most favorable light for the plaintiff, the court only allowed the evidence of usage to be received as explanatory of what was doubtful and not as contradicting any part of the contract.

Submitted as the case was under the act of congress, which authorizes parties to waive a jury by stipulation in writing, the court will proceed to a brief examination of the evidence of usage offered by the plaintiff, and admitted de bene by the court. Vessels frequently go to a second port, as the evidence offered shows, for their return cargo, but it is equally well established by the same depositions that they always do so under an express stipulation in the charter-party so to do, if required by the charterer, and not because any usage exists obliging them to go to a second port in cases where there is no stipulation to that effect. Evidence to support that theory of fact is found in the charter before the court, as it provides that the vessel "shall proceed to a safe port in Cuba for orders (Havana excepted), and there discharge the same (meaning the cargo), after which shall there $^{and}_{or}$ at one other usual place in the island, load," etc. Had that lan-

guage been incorporated into the policy of insurance, the question would be one of easy solution, but the charter-party is a contract between the owners of the vessel and the charterer, and is not in any aspect of the case to be regarded as the contract between the insurers and the insured. They have made their own contract, and the court, in ascertaining what their rights are under it, must look at its terms. Such a policy of insurance may be made to cover the whole voyage or a part of it, as the parties find it for their interest to contract. Insurance to port in Cuba and at and thence to port of advice might have been all that the insured desired, as he might know that his vessel would load at port of discharge, and in that state of the case he might not be willing to pay the additional premium for the risk of insuring the voyage to a second port. Conjectures, however, are unnecessary, as the conclusive answer to the theory of the plaintiff is that he did not contract with the insurers for the privilege to go to a second port, and the evidence which he offered upon the subject of usage does not show the existence of any such usage as he supposes. The deponents testify that vessels almost always go to a second port, but all the witnesses, or nearly all of them, agree that they do so by virtue of an express stipulation in the charter-party requiring them to do so, if the charterer so directs. They do not show that there is any usage which warrants a vessel in going to a second port under a policy of insurance, where its terms are from Liverpool to port in Cuba and at and thence to port of advice. Instead of that, most of the witnesses who testify in answer to such an inquiry express most decided opinions that under such a policy the vessel would be restricted to the port of discharge.

[A bill in equity to reform the said policy was dismissed in Case No. 6,302. A similar action by the same plaintiff against another company will be found in Cases Nos. 6,299 and 6,300.]