## SNARE & TRIEST CO. v. ST. PAUL FIRE & MARINE INS. CO.

(Circuit Court of Appeals, Second Circuit.   April 16, 1919.)

### No. 179.

1. INSURANCE ⊕⟶272—APPLICATION FOR MARINE INSURANCE—"DOCKED."

  The word "docked," as used in application for marine insurance, *held* not to be ambiguous, but to mean dry-docked.

2. INSURANCE ⊕⟶265—MARINE INSURANCE—ACTION ON POLICY.

  A statement in an application for a marine policy on a vessel, "warranted docked and · overhauled," not carried into the policy, is a representation only, and in an action at law on the policy may be shown to have been substantially performed.

3. INSURANCE ⊕⟶255—REPRESENTATION IN APPLICATION—MATERIALITY.

  Where the underwriter requests information in the application which, when given, amounts to a representation, such answer to a specific question is conclusively presumed to be material to the risk.

4. INSURANCE ⊕⟶312—MARINE INSURANCE—PROMISSORY REPRESENTATION.

  A representation in an application for insurance on a vessel during a voyage, that she will be dry-docked and overhauled before the voyage, is promissory, and a substantial compliance with it is sufficient to sustain the contract.

5. INSURANCE ⊕⟶312—MARINE INSURANCE—SUBSTANTIAL COMPLIANCE WITH PROMISSORY REPRESENTATION.

  A representation in the application for a marine policy that the vessel would be dry-docked and overhauled before the voyage may be shown to have been substantially complied with by proof which warrants a finding that, while not dry-docked, she was made entirely seaworthy, and was in as good condition as she would have been made if dry-docked.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Snare & Triest Company against the St. Paul Fire & Marine Insurance Company.   Judgment for defendant, and plaintiff brings error.   Reversed.

In October, 1913, the Snare Company (plaintiff here and below) owned a certain scow lying at the time in the harbor of Havana, Cuba, where she had been for some time.   Plaintiff employed Johnson & Higgins to procure marine insurance on this scow, which they intended to bring back to the United States.   These brokers made written application on behalf of plaintiff to the general agent of defendant insurance company for $4,000 on hull, etc., of scow, to cover "at and from Havana to Charleston direct or otherwise (in) tow (of) the Barnett," a tug.

This application the insurer declined until it had been amended or changed by the insertion of the following words: "Warranted dkd and overhauled 1913."   As changed or amended, insurance was granted, and one copy of the application was kept by the insurer and the other delivered to Messrs. Johnson & Higgins.   The date of written application was October 9, 1913.   On October 16th the insured issued its "certificate of insurance," under the "office policy" of defendant's general agent, which certificate, for · the purpose of this case, may be taken as the policy of insurance.   Neither in words nor substance was ·the phrase "Warranted dkd and overhauled 1913" inserted or expressed in said policy.

On October 30th the Barnett took this scow in tow and started from Havana to Charleston.   Forty-eight hours after leaving a storm arose, said to have been of great severity, which "finally washed to pieces" the scow, which thus became a total loss.   This action was brought to recover upon the policy.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There was evidence tending to show that the scow had been thoroughly caulked, overhauled, and painted, hatches secured with tarpaulins and put in "seaworthy and * * * first-class condition" before starting upon the voyage on which she was lost. But she had not been dry-docked in the year 1913, and before leaving Havana. Evidence was also introduced or offered to show that the overhauling and repairing of the scow put her in as good condition as she would have been had a dry dock been used.

The trial court took evidence tending to show that the word "dkd" was not only an abbreviation for "docked," but meant "dry-docked," and refused to submit any question to the jury, except the authority of Johnson & Higgins to apply for or accept insurance after making such representation or warranty as is embodied in the phrase "Warranted dkd and overhauled 1913." The jury found in favor of the authority of Johnson & Higgins by rendering a general verdict in favor of defendant on the single question submitted to them. Plaintiff took this writ.

Hector M. Hitchings and J. Elmer Melick, both of New York City, for plaintiff in error.

Oscar R. Houston and Harrington, Bigham & Englar, all of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] While under the jury's verdict we must hold that the word "docked" meant "dry-docked," we are of opinion that under the other circumstances shown no evidence was necessary to reach this conclusion. The acceptance of the application closed the contract for insurance; when and as approved by the insurer or his agent it was in substance a "binder" (Muller v. Globe, etc., Co., 246 F. 759, 159 C. C. A. 61), although no formal paper called a binder was in this case issued—a practice frequently followed. The word "docked," when used in such an instrument, is not ambiguous, but clear and precise, and needs no parol evidence to explain it. Hearn v. New England, etc., Co., 3 Cliff. 318, Fed. Cas. No. 6301. The word meant "dry-docked."

[2] But the insurance contract was not permitted to remain in the inchoate form of approved application or binder. A policy was issued and in force before the beginning of the voyage upon which the scow was lost, and into that policy the phrase out of which this controversy arose was not carried; it never became a part of the policy of marine insurance upon which this action is brought. As was held in Dow v. Whetten, 8 Wend. 160:

"The * * * application for insurance is admissible in evidence to show the intention of the parties. In a court of law it is proper evidence only to show a misrepresentation; in equity it may be used to correct the policy."

This being an action at law, the words in question must be treated as a representation only. A warranty, being a part of the policy, must be strictly and literally performed. Hazard v. New England, etc., Co., 8 Pet. 580, 8 L. Ed. 1043. But "a representation to the underwriters need only be substantially performed." Pawson v. Watson, 2 Cowper, 785. See, also, Gow on Marine Insurance (3d Ed.) p. 266, and Hughes v. Union, etc., Co., 8 Wheat. 307, 5 L. Ed. 620.

[3] In considering the effect of a representation upon a policy of

insurance, the first inquiry is as to its materiality, and the point has been "much considered whether the materiality of a misrepresentation or a concealment is a question of law which the court determines or a question of fact to be submitted to the jury." Parson on Marine Insurance (Ed. of 1868) vol. 1, p. 463. But where the underwriter requests the information, which when given amounts to a representation, such answer to a specific question is conclusively presumed to be material to the risk. Kerr v. Union, etc., Co., 130 Fed. 415, 64 C. C. A. 617.

[4] The evidence in this case is at least sufficiently full to warrant a jury in finding that the meaning and intent of this representation was that the scow to be insured would be "dry-docked and overhauled" before she started upon her voyage from Havana to Charleston in tow of the Barnett. Such a representation is promissory, and we adopt the ruling of Wallace, J., in Lunt v. Boston, etc., Co. (C. C.) 6 Fed. 562, that a substantial compliance with a promissory representation is sufficient to sustain a contract for marine insurance.

[5] This brings us to the question whether an overhaul without dry-docking, which did as matter of fact make the scow entirely seaworthy, and which was as thorough an overhauling or reconditioning as could have been given to the vessel if put in dry dock, is or can be a substantial compliance with the admitted representation here in controversy.

The exact question has not apparently been considered in any reported case; but, having regard to what was indicated as a substantial compliance in the Lunt and Pawson decisions, supra, we feel justified in holding that there may be, and there is in this record, evidence tending to show that the scow was, at and before voyage commenced, substantially in the condition of seaworthiness indicated or defined by the phrase "to be dry-docked and overhauled."

We express no opinion on this matter of fact. Most modern suits on policies of marine insurance are in admiralty, and the court determines the facts as well as the law; but whether a compliance is substantial or not is a question of fact, and therefore at common law for the jury, subject always to such limitations as to materiality and relevancy of testimony as are by law imposed.

Because the trial court refused to submit this question to the jury, we think error was committed. It may be noted that the point actually sent to the jury, viz. the authority of the brokers, seems to us entirely immaterial in this case. If the brokers exceeded their authority or departed therefrom, they may be liable as unfaithful agents; but, in respect of procuring this insurance, whatever they did within the usual wide authority of such brokers was done by Snare Company.

Further, this defendant is only liable, in an action on a policy, on the particular kind of policy issued and in suit. That the broker got a document not wanted does not per se vary or increase the liability of the insurer.

Judgment reversed, with costs, and new trial ordered.