### CABAUD v. FEDERAL INS. CO.

Circuit Court of Appeals, Second Circuit. January 6, 1930.

No. 167.

24

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston, of New York City, of counsel), for appellant.

Burlingham Veeder, Fearey, Clark & Hupper, of New York City (John L. Galey and Everett Masten, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and MACK, Circuit Judges.

L. HAND, Circuit Judge. The Ward Line in 1924 was in the hands of a receiver, Francis G. Caffey; it owned, or had possession of, a number of steamers against which claims had been filed, alleged by the claimants to be secured by maritime liens. Among these was the Esperanza, upon which the receiver already had hull insurance for

$335,000, and "disbursement" insurance for $165,000, up to her full value. The court directed him to keep "insured in the customary manner" those vessels "against which any person shall have filed a claim asserting a maritime lien." Acting upon this authority his agent applied for insurance in the following terms: "Insurance is wanted by Francis G. Caffey, receiver New York & Cuba Mail Steamship Company. For account of lienors. Loss, if any, payable to Francis G. Caffey, receiver for $900,000 on liens, PPI, FIA." Upon this application the respondent accepted a part of the underwriting and issued a policy on all the vessels as follows: "For account of themselves. Loss, if any, payable to Francis G. Caffey, receiver. Do make insurance and cause to be insured Francis G. Caffey, receiver per steamers, tugs and lighters as per list attached. * * * For $180,000 on liens, PPI, FIA." It is conceded that the Esperanza was one of the vessels so insured, and that she became a total loss.

The other underwriters paid their share, and the lienors claimed the whole proceeds. We held, in Colton v. New York & Cuba Mail S. S. Co. (C. C. A.) 27 F.(2d) 657, that they were entitled only to the proved amount of their liens, the surplus, if any, going to the receiver. This we put upon the ground that the order authorized the receiver to insure, not the face of the liens, but the actual amount proved, and that to the extent that he exceeded his authority, and paid greater premiums because of the clause, "full interest admitted," there was a constructive trust in favor of the Ward Line, whose money had been used without sanction to create pro tanto the chose in action.

The respondent, catching at this excuse, refused to pay its proportion of the underwriting. It asserted that the receiver had no insurable interest, and that, if he had, the language of the application, "For account of lienors," was a promise to pay all the proceeds upon the liens, a promise which the receiver had broken by successfully asserting his right to any surplus. This was a "promissory warranty," it argued, which survived the policy, though it had not been incorporated by reference. Moreover, it was material, because in effect it resulted in over-insurance of the hull, which increased the risk and would have prevented its acceptance, had the respondent understood the consequences.

■ We are not concerned with the anomalous doctrine of "promissory warranty," nor with

how far our decision in Snare & Triest Co. v. St. Paul Fire & Marine Ins. Co. (C. C. A.) 258 F. 425, may be extended. It will be time enough to consider the question when it rises again; certainly it is contrary to the general rule that the policy is the sole source of the obligations of the parties. Union Mut. Life Insurance Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674; El Dia Ins. Co. v. Sinclair, 228 F. 833 (C. C. A. 2). In the case at bar we cannot distinguish between the language of the application, "For account of lienors," and that of the policy, "On liens." If the second does not mean that the insurance was "for account of lienors," we cannot understand what it does mean. However, a declaration that the policy was for the benefit of the lienors, even though that be construed as meaning that all the proceeds would go to them, was not necessarily a promise to the underwriter, for a promise is an assurance, an "undertaking," Restatement of the Law of Contracts, § 2 (1). To be such the hearer must understand that he may rely upon it; men say much about future events that does not commit them. Ordinarily the hearer must have an interest in the fulfillment of what is said; otherwise, it will be seldom, if ever, that he can suppose it directed to him, or intended to be the basis for his conduct.

In the case at bar the respondent had no interest in who got the proceeds; the FIA clause made the recovery independent of the amount of the liens, a sum to be paid in case of total loss, to the lienors or to whoever else equity or law might assign their right in this chose in action. It is impossible, therefore, to regard the declaration as an undertaking by the receiver to pay it to the lienors; it only defined the respondent's performance, making the lienors, not the promisee, the beneficiary. In the continuance of that beneficiary the promisor had as little interest as in a trust subject to change of beneficiary by power of appointment.

 The respondent retorts that this change increased its risk, giving the receiver over-insurance on the hull, with whose safety the liens were identified. Had the receiver devised the plan as a means of overinsuring, this would be true; his motive to preserve the ship would have abated pro tanto. Had he even known that he had an interest in the surplus, the same argument might have

been made, though it would be tenuous. But the receiver did not know this, and never learned it; his successor contrived the theory after the loss had occurred. On the contrary, the receiver intended to give the lienors the full benefit of an FIA policy, and supposed that he had done so; it was we who frustrated that intent for outside reasons, which presupposed that it would have been effective, except for our interposition. How it can be supposed that in such a situation the receiver's motive to preserve the ship was weakened, or the risk increased, we cannot understand. The insurance, qua insurance, remained what it was in form; but it was made subject, like any other property, to such disposition as equity demanded. There was no promise, therefore, and no warranty, and the result did not affect the respondent's interests.

 It appears to us unnecessary to discuss at length the question of the receiver's insurable interest. He had none, and insured, not himself, but the lienors. We do not assume that at this day the respondent means to argue that he might not appear as party libelant in such a suit. Again, whatever may be said about the clause, "policy proof of interest," we have not to rely upon it; there were valid liens to be insured, and, so far as they have been proved, they have been made good to nearly their face. The clause, "full interest admitted," if an honest attempt to value the interest insured, not a gaming contract, is valid. Sturm v. Atlantic Mutual Ins. Co., 63 N. Y. 77; Hall & Co. v. Jefferson Ins. Co. [D. C.] 279 F. 892. The proof of the liens in full might turn out to be difficult after the loss; in fact, the insurance did not quite cover the claims. There is not yet, indeed, any reason to suppose that they will not be proved up to the amount of the insurance.

 Finally—lest we should be thought to have passed the point sub silentio—we cannot see how in any case the defense can be good except as to the surplus. So far as necessary to secure the liens, it had all the requirements of a valid contract. The most we could have done in any case was to direct the plaintiff to hold the surplus as trustee for the respondent, and turn it back to him when the liens had been cleared. We have given our reasons for denying even that.

Decree affirmed.