Nelson H. LEO, doing business as Overseas Associated Corporation, Plaintiff-Appellee,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.

No. 175, Docket 25848.

United States Court of Appeals Second Circuit.

Argued Feb. 3, 1960.

Decided March 8, 1960.

Bigham, Englar, Jones & Houston, New York City, (Martin P. Detels, Vincent L. Leibell, Jr., Charles W. Harvey, New York City, of counsel), for appellant.

Donovan, Leisure, Newton & Irvine, New York City (Robert M. Loeffler, Sidney P. Howell, Jr., Thomas J. Garrity, New York City, of counsel), in association with Honorio Poblador, Jr., Manila, Republic of the Philippines, for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.*

MADDEN, Judge.

After a trial before a jury, a judgment for the plaintiff in the amount of $300,- 000 was rendered in the United States District Court for the Southern District of New York. The defendant appeals.

The plaintiff's complaint alleged that the defendant insurance company had issued to one Appel a marine insurance policy covering irrigation and road-building machinery valued at $300,000 to be shipped on an approved barge in tow sailing from Manila to Davao, Philippine Islands; that the goods were shipped, the barge sank and the goods were lost. The complaint alleged that Appel had assigned his interest in the policy to the plaintiff; that a claim had been duly filed with the insurance company and had been denied by it. The suit was for $300,000.

The defendant's answer admitted the issuance of the policy and the refusal to pay, and denied generally the other allegations of the complaint. The answer also set up three affirmative defenses, only one of which is relevant in the instant appeal. That defense was that Appel had misrepresented to the insurance company that the cargo insured weighed at least 300 tons whereas in fact it weighed less than one-third that amount.

Appel's insurance broker, in Manila, in negotiating with the defendant insurance company for the placing of the insurance, wrote on August 12, 1953 to the defendant's local agent in Manila saying that the broker's client, Appel, was the co-owner of a large quantity of spare parts and equipment in Manila "of high value—I would venture to say $300,000." He said that Appel desired marine insurance for a contemplated transportation of the goods by water from Manila to Davao, and fire insurance before and after the water transportation. At the end of a fairly long letter of inquiry the plaintiff's broker wrote, "The approximate tonnage of this equipment is between 300 and 350 tons."

On August 14 the defendant's local agent wrote the plaintiff's broker asking

for further information about the subject of the proposed insurance. This rather long letter contained the following sentence, "In any event, prior to the writing of this cover, we would require a more definite valuation." In answer to this letter the plaintiff's broker wrote:

"While the value of these shipments may seem high, we have checked and we find that on most spare parts for Diesel engines, the values run very high, and in this case, while an average of $1,000 per ton is estimated, we believe that to replace this equipment would cost almost three times as much. * * * Mr. Appel's actual book value of this equipment is $283,000 and we have pointed out that in view of reconditioning charges, packing, towing, etc., the $17,000 increase would definitely be in order."

After receipt of this letter the defendant's local agent in Manila wrote the defendant's home office in Philadelphia requesting the defendant to issue the policy here sued upon. This letter said that Appel was a valued client of Elsen, Inc., the insurance broker in Manila which had negotiated the policy for Appel, and which company was, the letter indicates, a valued client of the defendant. The letter, and the policy issued pursuant to it, made no mention of tonnage.

So far as appears, all the goods co-owned by Appel and warehoused in Manila, i. e., the goods referred to in the correspondence leading up to the issuance of the policy, were loaded on the barge and were lost. They did not weigh 300 tons. They weighed about 120 tons. The defendant says that it would not have issued the policy had it not been for the misstatement in the letter of the plaintiff's agent that the goods weighed 300 tons.

The statement of the plaintiff's agent about the tonnage was greatly in error. The question for the jury was whether the statement was material, i. e., did it play any material part in inducing the defendant to issue the insurance? The jury must have concluded that it did not, since the jury was adequately instructed on the subject. The jury's conclusion was entirely reasonable. The book value which Appel represented to Elsen, Inc., the defendant's valued client, and which Elsen, Inc., reported to the defendant, would have been heavily relied on by an insurance company. That value was confirmed at the trial by the plaintiff's introduction of an inventory with specific values ascribed to each item, and by the deed of sale by which Appel had acquired the goods which showed that he had paid or obligated himself to pay $326,480.38 for them two months before the policy in question was issued.

To be sure, the defendant produced at the trial two qualified expert witnesses, who, in response to a hypothetical question whether a representation that a shipment weighed between 300 and 350 tons with an average estimated value of $1,000 per ton was a circumstance that would materially affect the risk, each answered in the affirmative. It is worthy of note that the defendant's agent or agents who considered the issuing of the policy did not testify as to whether in fact the erroneous representation had induced them to issue it.

█ The defendant complains that the District Court did not give to the jury a specific instruction requested by the defendant to the effect that if the jury found that the misrepresentation of Appel's broker as to the tonnage of the shipment was material, the jury must find for the defendant. The court had, after reviewing the evidence relating to the misstatement of the tonnage, charged the jury:

"Also if you should find that the insurance company has established by a fair preponderance of the evidence that the insurance contract was issued as a result of fraud or misrepresentation of material facts, then, of course, you would have to decide for the defendant, because then the policy would be void."

We think the charge given by the court fairly presented the problem to the jury, and that it was well within the court's discretion to refuse to charge upon particular bits of evidence. The charge requested by the defendant was improper in that it did not state that a misrepresentation, though material, must be found to have been in fact an inducing cause of the making of the contract in order for it to be a ground for nullifying the contract.

It should also be said that there was probably not enough evidence of materiality to justify submitting the question to the jury. The expert testimony referred to earlier herein seems to us to have been of no weight. The hypothetical question did not describe the kind of goods to which it related. As to many kinds of goods having an ascertainable market value per ton, a misstatement of the tonnage would be a misstatement of value, which would be material. As to many other kinds of goods, including the goods here involved, an insurance company might not relate tonnage to value at all. As we have said, there was no evidence at all that the defendant had, in fact, relied on the representation of tonnage in deciding to issue the policy.

The defendant complains of the court's instruction that if the jury should return a verdict for the plaintiff, it should be for $300,000. The defendant says that the court should have permitted the jury to bring in a verdict for a lesser sum.

The court's charge was correct. The policy was a valued policy for $300,-000. It was issued to cover the goods which Appel had in a warehouse in Manila. There was no evidence that less than all of the goods covered by the insurance were shipped. The tonnage of the goods was misstated, and that posed the question of materiality which we have discussed above. Once the jury had resolved that question, if there was a question to be resolved, it had to either find for the defendant on the ground of material misrepresentation, or find for the plaintiff for the amount of the policy. To have authorized the jury to find for the plaintiff, but for a lesser amount, would have been to authorize them to bring in a compromise verdict not justified by the evidence.

The defendant complains of the court's refusal to give a specific charge that if the jury found that the crates and cases contained scrap or rusty metal equipment, then they must find for the defendant because then the agreed valuation would have been arrived at by both a misrepresentation and a concealment of a material fact.

The court's refusal to charge the jury on particular bits of evidence was applicable to this request, and was proper. The court's charge that if the policy was issued as a result of fraud or material misrepresentation it was void, was sufficient.

During the trial of the case, the Judge said, in the presence of the jury, that he did not yet understand what the defendant's defense was, and asked counsel if it was only that they did not want to pay the money. That the Judge had been unable to get a clear understanding of the issues was natural, since so many defenses were suggested or hinted at but no substantial evidence was offered to support them. It was high time that the issues be defined for the Judge and the jury, and it was proper for the Judge to insist that they be defined. His casual, and obviously humorous, remark about not wanting to pay the money might better have been left unsaid, but we have no idea that it made an impression on the jury which affected the outcome of the case.

We find no merit in the appeal and the judgment is therefore affirmed.