NAVEGACION GOYA, S. A. and American Bulk Carriers, Inc., Plaintiffs,

v.

MUTUAL BOILER & MACHINERY INSURANCE CO., et al., Defendants.

No. 69 Civ. 4170.

United States District Court, S. D. New York.

Dec. 12, 1975.

Robert Thomajan, George L. Graff, Milgram, Thomajan & Jacobs, P.C., New York City, for plaintiffs.

Sheldon A. Vogel, John H. Parker, Bigham, Englar, Jones & Houston, New York City, for defendants.

PIERCE, District Judge.

## OPINION

Plaintiffs herein, Navegacion Goya, S.A. (Goya) and American Bulk Carriers, Inc. (ABC), sue pursuant to the admiralty and maritime jurisdiction of this Court, 28 U.S.C. § 1333, to recover under a contract of marine insurance for damage by fire to the S/T KENT (*Kent*), a vessel owned by Goya and operated by ABC. The complaint demands judgment from the five defendant insurance companies[1] (collectively, the insurers or underwriters) in an amount totaling $84,500 together with interest thereon.

The defendants do not dispute the execution and delivery of the insurance contract, nor the damage to the *Kent*. Rather, defendants deny liability under the policy, claiming that the policy was voided by the action of the plaintiffs in changing the flag of the vessel from United States to Panamanian on or about August 4, 1968, during the period of coverage.

---

1. The defendant insurers are Mutual Boiler & Machinery Insurance Co. (Mutual Boiler), American Manufacturers Mutual Insurance Co., Stuyvesant Insurance Co., St. Louis Fire & Marine Insurance Co., and Jefferson Insurance Co.

The parties have stipulated that the following facts are not in dispute in this action:

1. Plaintiff Goya was from and after August 4, 1968, the owner of the *Kent.*

2. Plaintiff ABC was at all times relevant to this action the operations manager of the *Kent.*

3. Corsair Transportation Corp. (Corsair) was at all relevant times prior to August 4, 1968, the owner of the *Kent.*

4. The defendants are corporations engaged in the insurance business each with a principal place of business in the United States of America.

5. For the period commencing September 1, 1967, and ending August 31, 1968, Corsair and ABC, as Managers, through John P. Tilden Ltd., insurance brokers of 100 William Street, New York, N.Y., caused the *Kent,* her hull, machinery, etc., to be partially insured under Policy No. JPT 67–252 to the extent of the fraction of the amount insured thereunder, $262,500 over the agreed valuation of vessel $1,750,000, against the risks specified in said policy. The defendants' subscriptions to the said policy were as follows:

| | |
|---|---|
| Mutual Boiler & Machinery Insurance Company | $52,500 |
| American Manufacturers Mutual Insurance Company | 52,500 |
| Stuyvesant Insurance Company | 43,750 |
| St. Louis Fire & Marine Insurance Company | 43,750 |
| Jefferson Insurance Company | 35,000 |
| Total amount insured by defendants | $227,500 |

The remaining $35,000 of Policy No. JPT 67–252 was subscribed by Maryland National Insurance Company. Policy No. JPT 67–252 was issued through the said brokers John P. Tilden, Ltd. in New York. It bears the date October 10, 1967 and the assureds named therein are Corsair and ABC, as Managers for account of themselves, but subject to the provision of this Policy with respect to change of ownership. The remaining $1,487,500 of the agreed valuation of the $1,750,000 was insured in London by British underwriters.

6. All premiums with respect to Policy No. JPT 67–252 have been paid.

7. On or about August 4, 1968, ownership of the *Kent* was transferred to plaintiff Goya and her flag was changed from United States to Panamanian.

8. Corsair and Goya were affiliated and/or interrelated companies within the meaning of JPT 67–252 in that, inter alia, the ultimate shareholder of each corporation was Samuel H. Wang.

9. On August 14, 1968, New York time Goya and ABC sent John P. Tilden, Ltd. a letter stating that the *Kent* had been sold from Corsair to Goya on August 4, 1968, and flag changed from U.S. to Panamanian.

10. On August 15, 1968, at 0915 local time in Bombay, India, a fire occurred aboard the *Kent.*

11. The loss occasioned by the fire was an event of loss covered by the policy conditions for which payment would be due if policy number JPT 67–252 was in force and effect on August 15, 1968.

12. As a result of the fire on August 15, 1968, at 0915 Bombay time the *Kent* sustained damage in the total amount of $650,000.

13. British Underwriters have made payment of $552,500 representing their proportionate share of the total amount of $650,000, and Maryland National Insurance Co., one of the "American" Underwriters, has paid $13,000 representing its proportionate share of the $650,000.

14. JPT 67–252 does not contain a clause which provides for cancellation or cessation of insurance in the event of a change in flag of the vessel *Kent.*

In addition, the Court finds the following relevant facts to have been established by the evidence:

15. The Affiliated Companies Clause in Policy No. JPT 67–252 provides that the policy shall cover affiliated companies of the assured (Corsair) as owners of the vessels insured. It is stipulated that Corsair and Goya are affiliated companies within the meaning of Policy No. JPT 67–252. (See Finding 8, *supra*.) No issue has been raised in this case as to Goya being the party entitled to recover under the policy should plaintiffs succeed in this lawsuit.

16. The defendant insurers' policy contained a provision requiring these underwriters to "follow", in certain respects, the decisions and actions of the London insurers who were the "lead" underwriters on this policy.[2]

17. Nowhere in the Policy of Insurance itself (Plaintiff's Ex. 6) or in the Hull Application itself (Ex. 2)—a document supplied by the broker which also embodies the written binder of insurance—is the flag of the *Kent* described. Nor is there any question asked concerning flag on either form.

18. Defendants' Exhibit A represents a questionnaire prepared by the American Hull Syndicate and used by many American underwriters, including Syndicate members, at the time the policy in suit was written. Plaintiff's Exhibit 5 represents the written answers to the questions contained in Exhibit A.

19. Exhibit 5 was submitted to defendant Mutual Boiler by plaintiff's broker, Tilden, at the request of John N. Blackman (Blackman), President of Mutual Boiler, but it was not submitted to any of the other defendants. (Tr. 62–64, 125–32)[3]

20. Exhibit 5 included the answer to a question (Ex. A, question 13) concerning the flag of the vessel and stated that the flag of the *Kent* was American, which was true at that time.

21. Although when Blackman received Exhibit 5 he did not have before him the printed questionnaire to which the written answers referred, he understood, based on his extensive experience in the marine insurance business, that the item on the answer sheet numbered 13 referred to the flag of the vessel. (Tr. 316)

22. Exhibit 5 was submitted to Mutual Boiler along with Exhibit X, a copy of the Hull Application. Blackman had received Exhibit X before the risk was bound on behalf of Mutual Boiler, as evidenced by his handwritten questions appearing thereon. Therefore, the Court finds that Blackman received Exhibit 5 before the risk was bound on behalf of Mutual Boiler for 3% of the total.

23. None of the defendants, other than Mutual Boiler, offered evidence concerning whether they considered the flag of the vessel material to the risk, or considered it at all.[4]

24. The expert testimony offered by the defendants to the effect that flag is customarily viewed as a material consideration in the writing of marine insurance (Tr. 274–75, 317–18) was uncontradicted by any evidence offered by the plaintiff.

25. Blackman testified that the fact that the flag of the *Kent* was represented as being American at the time the risk was bound by Mutual Boiler was considered material by him, and the Court credits this testimony. (Tr. 318–19)

26. The Policy of Insurance (Ex. 6) does contain two provisions specifically dealing with cancellation of coverage. The Brokers Cancellation Clause provides that the insurance may be cancelled for non-payment of premiums. The Change of Ownership Clause provides (with certain exceptions,

---

**2.** This clause, referred to as the London Following Clause, states:

"This insurance is subject to the same gross rate, terms and conditions as British Underwriters and it is agreed to follow British Underwriters in regard to alterations, extensions, additions, endorsements and cancella-

tion and also in regard to surveys and settlement of claims and returns including appointment of surveyors and attorneys." (Exhibit 6)

**3.** The designation TR. refers to pages in the trial transcript.

**4.** See note 10 *infra*.

see Findings # 1, 3, 8, 15) for automatic cancellation of the policy if the ownership of the vessel is changed without the written agreement of the underwriters.

## Discussion

■ The first question to be considered is that of the applicable law. Where, as here, a case involves a marine insurance policy, state law governs unless there is a well-settled federal admiralty rule applicable to the particular issues of the case. *Wilburn Boat Co. v. Fireman's Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186 (2d Cir. 1970); *Purofied Down Products Corp. v. Travelers Fire Ins. Co.,* 278 F.2d 439 (2d Cir. 1960). Applying this principle, this Court has previously determined that in this case New York law is the governing law. See *Navegacion Goya, S.A., et al. v. Mutual Boiler & Machinery Ins. Co., et al.,* 1972 A.M.C. 650, 653 (S.D.N.Y.1972).

■ Plaintiffs' arguments that English law should govern must fail. Plaintiffs have not shown that it was the intent of the parties that the inclusion of the London Following Clause meant that English law should apply. Nor is the Court persuaded by the plaintiffs' argument that the provisions of substantive English law—particularly Section 37 of the British Marine Act of 1906 [5]—were "terms and conditions" of the London "lead" policy and were therefore incorporated into the American policies by the London Following Clause. The cases cited by the plaintiffs are inapposite. Both involved incorporation into "following" policies of clauses which had been *specifically set forth* in the "lead" policies. See *Bank of Rockville Centre Trust Co. v. Baldwin,* 238 App.Div. 354, 265 N.Y.S. 343 (1st Dept. 1933); *National Factors, Inc. v. Waters,* 42 Misc.2d 822, 249 N.Y.S.2d 121 (Sup.Ct.N.Y. Co.1964).[6] The Court determines, therefore, that New York law shall govern this case.[7]

■ On the basis of the agreed upon facts in this action, i. e., that the policy of insurance was issued, that the loss occurred, and that the loss was an event within the terms of the policy, plaintiff has made a *prima facie* case for recovery. See *Alexander, Ramsay & Kerr, Inc. v. National Union Fire Ins. Co.,* 104 F.2d 1006 (2d Cir. 1939). Moreover, the London Following Clause contained in the policy provides by its terms that the American insurers shall follow British underwriters in the event of their settlement of claims. And it is not disputed that the British underwriters have settled claims relating to the loss of the *Kent.*

■ In the face of such a *prima facie* showing, the defendants have the burden of demonstrating that they are not obligated to pay. See *New Jersey Mut. Life Ins. Co. v. Baker,* 94 U.S. 610, 24 L.Ed. 268 (1876); *Rosen v. Colonial Co-op Ins. Co.,* 51 Misc.2d 805, 274 N.Y.S.2d 67 (Sup.Ct. Erie Co.1966), *modified on other grounds,* 28 A.D.2d 1089, 285 N.Y.S.2d 583 (4th Dept. 1967). In an effort to meet this burden, defendants have advanced two distinct arguments, each focusing on the change of the flag of the *Kent* from American to Panamanian. The defendants contend, first, that when the plaintiffs changed the flag of the *Kent* from American to Panamanian they breached a promissory representation made at the

---

**5.** The parties stipulated to the acceptance and applicability of Section 37 of the British Marine Act of 1906 to the English policy. It reads: "No Implied Warranty of Nationality. There is no implied warranty as to the nationality of a ship or that her nationality shall not be changed during the risk." (Tr. 141–42)

**6.** The plaintiffs' additional argument that English law must apply by virtue of the application of the New York Suable Clause contained in the London policy must also fail, if for no other reason, because of the inability of the plaintiffs to place before the Court the clause in question as it appeared in the London policy. The fact that a New York Suable clause exists in the form represented by Exhibit 7 cannot be taken to establish that the clause in the London policy was in this form.

**7.** To the extent that there are admiralty rules with respect to the issues of this case, the Court has found no conflict between those rules and the applicable principles of New York law.

time the insurance was bound that the flag of the *Kent* would remain American throughout the term of the policy. Alternatively, defendants contend that the change in flag was a material alteration of the risk insured and that any such alteration during the term of the policy discharges the underwriters from liability. In either case, defendants argue, the change of flag resulted in a suspension of the policy. Therefore, they contend, the policy was not in effect at the time of the loss and the defendants have no obligation to pay under it.

■ Plaintiffs' response to these contentions is that even if their statement that the flag of the vessel was American constituted a material promissory representation which was breached, the defendants are nevertheless obliged to pay under the contract of insurance; and that this obligation of the defendants flows from the London Following Clause which binds the defendants to pay if the British underwriters have paid, which they have.

■ For the plaintiffs to prevail with this theory of the contract, they would have to show either that there was express contractual language to this effect, or that other evidence reflects an intent on the part of the contracting parties to be so bound. The Court finds that plaintiffs have not met the burden of establishing their theory of the contract by means of either alternative. Therefore, the remaining issue to be determined, concerning the obligation of the defendants to pay—by virtue of the London Following Clause or otherwise—is whether the contract of insurance was in effect at the time of the loss or was suspended because of the change of flag.

■ The Court will first address defendants' promissory representation theory. It is clear that under New York law the applicant for a policy of marine insurance is bound to disclose every fact material to the risk which is within his knowledge and which is not known to the insurer. *Morton v. Home Ins. Co.,* 32 A.D.2d 621, 299 N.Y. S.2d 642 (1st Dept. 1969); *Stecker v. American Home Fire Assurance Co.,* 299 N.Y. 1, 84 N.E.2d 797 (1949). Federal maritime law is to the same effect. See *Leo v. Insurance Co. of No. Am.,* 275 F.2d 766 (2d Cir.), *cert. denied,* 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960); *Blair v. National Sec. Ins. Co.,* 126 F.2d 955 (3d Cir. 1942); *Alexander, Ramsay & Kerr v. National Union Fire Ins. Co., supra; Wathen v. Public Fire Ins. Co.,* 61 F.2d 962 (2d Cir. 1932); *Btesh v. Royal Ins. Co.,* 49 F.2d 720 (2d Cir. 1931); *Anne Quinn Corp. v. American Manufacturers Mut. Ins. Co.,* 369 F.Supp. 1312 (S.D.N.Y.1973), *aff'd without opinion,* 505 F.2d 727 (2d Cir. 1974); *Rosenthal v. Poland,* 337 F.Supp. 1161 (S.D.N.Y. 1972). There is no claim here that the plaintiffs failed to comply with this disclosure requirement at the time the insurance was placed.

■ The law is less clear, however, on the question of whether a representation, such as the one at issue here, which is made in conjunction with an application for insurance and which is true when made, constitutes only an affirmative representation as to present facts or is a promissory representation that those facts will remain true. Upon a review of the applicable law the Court concludes that while the issue is not firmly settled, the more persuasive authority supports the view of the plaintiffs herein that under New York law a representation as to future conduct of the insured has no promissory character unless it is either specifically so described or is included in the policy itself. See *Mayor of New York v. Brooklyn Fire Ins. Co.,* 43 N.Y. (4 Keyes) 465 (1868); *Alston v. Mechanics' Mut. Ins. Co. of Troy,* 4 Hill 329 (1842); 7 *Couch on Insurance* 2d § 35:100, 103 (1961). The Court reaches this conclusion with an awareness that contrary inferences can be drawn from certain other cases cited by the defendants. See *O'Niel v. Buffalo Fire Ins. Co.,* 3 N.Y. 122 (1849); *Irvin v. Sea Ins. Co.,* 22 Wend. 380 (1839); *Murray v. Alsop,* 3

Johns.Cas. 47 (1802).[8] The Court holds here, that under the facts of this case, there was no promissory representations as to the flag of the *Kent.* Accordingly, the defendants may not avoid payment on the policy based on a claim that the plaintiffs made and breached such a representation, resulting in suspension of the insurance coverage.

■ The Court's conclusion with respect to promissory representations comports with "the general rule that the policy is the sole source of the obligations of the parties. (citations omitted)." *Cabaud v. Federal Ins. Co., supra,* at 25. If an exclusion of liability is intended by the insurer which is not made apparent from the language used, it is the insurer's responsibility to make this fact clearly known. *Government Employees Ins. Co. v. Ziarno,* 273 F.2d 645 (2d Cir. 1960); *Trinidad Corp. v. American Steamship Own. Mut. Prot. & Indem. Assn.,* 229 F.2d 57 (2d Cir.), *cert. denied,* 351 U.S. 966, 76 S.Ct. 1032, 100 L.Ed. 1486 (1956); *Sperling v. Great Amer. Indem. Co.,* 7 N.Y.2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482 (1960); *Greaves v. Public Serv. Mut. Ins. Co.,* 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959); *Morgan v. Greater N.Y. Taxpayers Mut. Ins. Assn.,* 305 N.Y. 243, 112 N.E.2d 273 (1953); *Aetna Cas. & Sur. Co. v. General Cas. Co.,* 285 App.Div. 767, 140 N.Y.S.2d 670 (1st Dept. 1955). The defendants made it clear in the contract of insurance that an unauthorized change of ownership was a change which would result in automatic cancellation of the policy.[9] But, they said nothing about a change of flag. It thus is evident that the insurers did not consider the matter of flag to be of equal importance.[10]

■ The defendants' second affirmative defense rests on their claim that even apart from any representation made in an application an insured has a continuing obligation to inform the insurer of any material change in the risk insured, and that if such a change is made without the approval of the insurer the underwriters are discharged from liability under the policy for a loss sustained after the change occurs. Defendants claim such a change took place when the flag of the *Kent* was changed.

■ It is the view of this Court that this salutary principle must be applied in conjunction with a correlative principle that the insurer must notify the insured at the time coverage is granted of any changes which will result in a loss of coverage. See cases cited *supra.* In other words, the principle must be applied to changes in risk as the risk is defined in the policy.[11] In this case, the change of flag simply did not result in a change in the risk insured *as that risk was defined in the policy of insurance.*

8. Maritime law on the point is perhaps even less definite than New York law. Certainly it cannot be said that there is a well-established rule. It suffices for the present purposes to note that the case relied on by the defendants apparently involved a situation where a statement that a scow was "warranted dkd [dry-docked] and overhauled 1913" was included in an application for marine insurance in response to a specific question by the underwriter. See *Snare & Triest Co. v. St. Paul Fire & Marine Ins. Co.,* 258 F. 425 (2d Cir. 1919). There the court found the representation to be promissory. *Id.* at 427. However, the validity of even that holding, based on facts stronger than those presented by the defendants here, was specifically questioned by the Second Circuit in a later opinion. See *Cabaud v. Federal Ins. Co.,* 37 F.2d 23 (2d Cir. 1930).

9. See Finding # 26, supra.

10. The Court's conclusion that no promissory representation was made to the defendant Mu-

tual Boiler obviates the need to address the defendants' argument that any representation which was made to that defendant must be deemed to have been made to all because of that defendant's alleged "lead" position among the American underwriters.

11. The cases relied on by defendants are not to the contrary. In *Insurance Co. of No. Am. v. United States Fire Ins. Co.,* 67 Misc.2d 7, 322 N.Y.S.2d 520 (Sup.Ct.N.Y.Co.1971), *aff'd without opinion,* 42 A.D.2d 1056, 348 N.Y.S.2d 122 (1st Dept. 1973) a loss to the insured's merchandise occurred while the merchandise was in port being bagged. The court determined, by looking at the original contract of insurance, that this loss was not within the terms of the contract which covered the goods while they were "in transit."

*Btesh v. Royal Ins. Co., supra,* was a case in which the trial court found that the nature of the lost cargo for which the insured sought recovery had been accurately described as silk

■ The defendants' affirmative defenses having failed, the Court finds that the policy of insurance was in effect at the time of the loss of the *Kent*. Accordingly, effect must be given to the London Following Clause. Given the terms of this clause, and, additionally, in view of the undisputed facts set forth at p. 934, *supra*, the Court finds no basis for allowing the defendants to avoid liability under the policy in suit. The plaintiffs are entitled to judgment against the defendants in the amount prayed for.

The foregoing shall constitute the Court's findings of fact and conclusions of law, as required by Rule 52(a), Fed.R.Civ.P. The clerk of the Court is directed to prepare an appropriate form of judgment.

to the insurer, but had been misrepresented as cotton to the carrier in whose custody the goods were lost. The court found that this change in description had increased the risk of loss of the goods. On appeal, Judge Learned Hand ruled that in failing to inform the insurer that the nature of the goods had been misrepresented to the carrier, the insured had breached the well-established obligation of the insured to reveal, at the time insurance is sought, all facts material to the risk which are known to him, but not to the insurer. *Id.* at 721–22. This Court is unable to agree with the defendants here that the *Btesh* opinion lends any support to their "change of risk" theory.