Joseph A. Sabafite, J.
Plaintiff moves for summary judgment and defendant cross-moves for summary judgment. They are respectively insurer and reinsurer. The suit is to recover $189,448.66 on a contract of reinsurance.
An open marine cargo policy was issued by the plaintiff to the assured, Transammonia, Inc., covering shipments of anhydrous ammonia, a fertilizer, while in transit from U. S. gulf ports to the United Kingdom. A policy of reinsurance was issued by the defendant to the plaintiff. On August 11, 1969 the fertilizer cargo was destroyed by hurricane “ Camille ”.
_The instant motion, involving an application of the so-called ‘ ‘ follow-the-fortune ” clause in the insurance business is, according to the uncontradicted statement of the plaintiff, one of first impression.
Neither plaintiff nor defendant could present any authority regarding the history of the use of the term “ follow-the-fortune ” and the court, after an independent search, similarly was unable to find such authority. Both plaintiff and defendant *9 agree, however, that “ follow-the-fortune ” is a term commonly used in reinsurance, meaning that the reinsurer follows the fortune of its reinsured and that the precursor of this term was the phrase “ to pay as may be paid ”.
The cargo had been shipped in bulk from interior United States ports to Gulfport, Mississippi. At Gulfport, the cargo was to be bagged prior to loading for overseas transport.
The president of Transammonia, in his examination before trial, reveals that the bagging of the goods was neither necessary nor incidental to their further transportation. He testified that the cargo could have been loaded on board the vessel and shipped overseas in bulk and that the only reason it was not was because of Transammonia’s contracts with the purchaser which called for bagging. He said such cargo, if it had not been destroyed, would have remained at Gulfport for bagging possibly for a period of time up to several months.
The defendant issued a specific policy of reinsurance to the extent of 25% of the risk. A specific policy reinsures one policy only as contrasted to a treaty type of insurance which reinsures all or a stated percentage of policies which the reinsured may issue. The reinsurance contracts in the instant case included the so-called “ follow-the-fortune ” or “ pay as may be paid ” clause reading in part as follows: “ This reinsurance is subject to such risks, valuations and conditions, usual or unusual as are or may be taken or granted by the Reassured, including any alterations, amendments or extensions to which the Reassured may hereafter agree without notice to the Reassurers, and to pay as may be paid by the Reassured, liable or not liable ’ ’.
Subsequent to the issuance of the reinsurance policy, the plaintiff issued two binders to the assured, on June 13,1968 and August 5,1969, respectively, for an additional premium, covering its insured for inland transport “ from Int. U. S. to Gulfport, Miss., and while at risk there at State Authority Warehouse, Gulfport, Miss, during bagging operation and thence, until laden on board overseas vessel. ”
The fertilizer cargo was destroyed by hurricane while undergoing bagging operations at Gulfport.
Plaintiff paid Transammonia, Inc., for its loss. The defendant refused to pay out on the reinsurance contract and this suit resulted.
The basic question involved in the suit is: Did the defendant reinsure the loss sustained on August 11, 1969, at a time when the fertilizer was in part already bagged and in part in the process of being bagged at a warehouse in Gulfport, preparatory to further overseas shipping?
*10 The plaintiff argues in the affirmative, relying on the ‘ ‘ follow-the-fortune ” clause which in Western Assur. Co. of Toronto v. Poole ([1903] 1 K. B. 376) was defined to mean that: “ The rein-surer, when called upon to perform his promise, is entitled to require the reassured first to show that a loss of the hind reinsured has in fact happened; and, secondly, that the reassured has taken all proper and businesslike steps to have the amount of it fairly and carefully ascertained. That is all. He must then pay * * *. He has promised ‘ to pay as may be paid thereon.’ Such is in my opinion the meaning and effect of these reinsurance policies ” (p. 386, emphasis added).
The defendant answers the question in the negative, contending principally that it reinsured a specific policy concerning goods in transit; that the goods were not in transit when destroyed and that the plaintiff, by means of the subsequent binders, increased the risk, making it one not reinsured by the defendant.
An insurance contract is to be construed to give effect to the intention of the parties as expressed by the language used. The language used is given its usual and ordinary meaning (Justice v. Stuyvesant Ins. Co., 265 F. Supp. 63).
Plaintiff’s emphasis on the phrase “ liable or not liable ”, in the above-quoted clause from the reinsurance contract, as binding defendant reinsurer to pay, in effect, whenever the reinsured decides, unilaterally, to pay its assured is misplaced. It would be an unwarranted and indeed tortured construction of that clause to hold a reinsurer bound, for example, to pay if the prime insurer paid moneys to its insured on a claim completely without the scope of the policy and not in good faith. This construction is implicitly accepted by plaintiff in its argument in its brief that “ Where the loss sustained is, in the judgment of the primary insurer, one reasonably covered under the primary policy the reinsurer is bound to pay.” (Emphasis added.) This argument supports defendant’s contention that before its obligation to pay arises the claim paid by its assured must be reasonably encompassed within the bounds of the policy.
While the “ follow-the-fortune ” clause is certainly a broad one, it is clear that the reinsurer is liable only for ‘ ‘ a loss of the kind reinsured” (Western Assur. Co. of Toronto v. Poole, supra). To determine what type of loss was reinsured, we must turn to the original insurance contract. Construction of the latter contract reveals that it covered “ shipments ”, “ voyages ”, “ connecting consignees ” and goods while “ in transit ”. The examination before trial of Transammonia’s president makes it crystal clear that the bagging process was not necessary to the *11 transit of the cargo. The intent of the parties to the original insurance contract, showing that the bagging operation was not covered by the original contract, is borne out by the plaintiff’s subsequent issuance of two binders covering the merchandise while at Gulfport, Mississippi. The president of Transammonia, in his deposition, testified that the binders were issued at his request for coverage on the bagging operation and that as far as he was concerned, the goods lost or damaged in Gulfport were insured by reason of the binders.
The stoppage and bagging of the cargo at Gulfport was an interruption in the transit of the goods and created a shore risk not insured under plaintiff’s original insurance contract (see Koshland v. Columbia Ins. Co., 237 Mass. 467 [1921]).
The defendant never consented to reinsure this loss not covered in the original insurance policy. Plaintiff’s contention that, by implication, the defendant consented, in that defendant paid out some small warehouse claims is of no merit in determining the true contractual relationship between the parties.
This court finds no triable issue of fact.
Accordingly, the defendant’s motion for summary judgment is granted and the plaintiff’s is denied.