AMERICAN INSURANCE COMPANY, Plaintiff-Appellant,

v.

NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE, formerly known as Service Fire Insurance Company of New York, Defendant-Appellee.

No. 628, Docket 82–7569.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1982.

Decided Dec. 30, 1982.

James J. Harrington, New York City (B. Jennifer Jaffee and Lester Schwab Katz & Dwyer, New York City, on the brief), for plaintiff-appellant.

Colleen McMahon, New York City (Steven B. Rosenfeld, Kevin J. O'Brien and Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for defendant-appellee.

Before FRIENDLY and NEWMAN, Circuit Judges, and WYZANSKI,* District Judge.

NEWMAN, Circuit Judge:

Plaintiff American Insurance Company (AIC) appeals from a March 4, 1982, judgment of the United States District Court for the Southern District of New York (Henry F. Werker, Judge) entered in favor of defendant North American Company for Property and Casualty Insurance (NACPAC). After a bench trial, the District Court found that NACPAC was not required under its agreement with AIC to reimburse AIC for any part of a settlement AIC made on behalf of Dow Chemical Company.

During the 1970's, AIC insured Dow Chemical Company for all damages that Dow became legally obliged to pay. In 1974, NACPAC agreed to reinsure part of AIC's risk and assumed responsibility for a layer of liability between $250,000 and $500,000 per damage award. On July 15, 1977, a Minnesota state court jury awarded $146,970 of compensatory damages and $750,000 of punitive damages against Dow for damages caused by a fire in a building insulated with Styrofoam, a Dow product.

While the Minnesota award was on appeal, AIC agreed to settle a number of Styrofoam cases, including the Minnesota case, for $1.2 million. Of that settlement, $500,000 was allocated to the Minnesota case. AIC then requested that NACPAC honor its reinsurance policy and reimburse AIC for $250,000 of the Minnesota award. When NACPAC refused, AIC brought this suit.

In the District Court, NACPAC defended on the ground that AIC's insurance policy with Dow (and therefore NACPAC's reinsurance agreement with AIC) did not cover punitive damages assessed to punish corporate officials for intentional misconduct. According to NACPAC, the Minnesota jury had awarded punitive damages against Dow for deliberate corporate misbehavior, and consequently most of AIC's Minnesota settlement had compensated Dow for damages excluded from the insurance and reinsurance policies. NACPAC claimed that the part of the settlement attributable to compensatory damages, which was the only part covered by NACPAC's policy, was less than $250,000; NACPAC therefore had no duty to reimburse AIC for any portion of the settlement. The District Court accepted NACPAC's interpretation of AIC's insurance policy with Dow, and also agreed that NACPAC owed nothing to AIC under the reinsurance agreement.

On this appeal, AIC challenges the District Court's interpretation of the AIC-Dow insurance policy. The District Court had concluded that, although the policy itself was ambiguous, evidence introduced as to the intent of the parties supported NACPAC's view that punitive damages awarded for corporate misconduct were not covered. AIC now claims that the District Court did not give enough weight to evidence suggesting that Dow may have thought the agreement covered these punitive damages.

If our consideration of the matter were confined to the terms of the policy, we might not share the District Court's view

---

\* The Honorable Charles Edward Wyzanski, Jr. of the United States District Court for the District of Massachusetts, sitting by designation.

that there was sufficient ambiguity concerning the meaning of the term "damages" to permit examination of extrinsic evidence of the intentions of AIC and Dow. Nor would we necessarily think that there was sufficient ambiguity in the phrase of the policy's definition of "occurrence" that refers to "damage not intended from the standpoint of the insured." But however we might view the bare terms of the policy, the record discloses additional circumstances that support the District Court's ultimate conclusion that the punitive damages awarded in the Minnesota litigation were not within the policy's coverage. The parties in this litigation have stipulated that on December 15, 1971, plaintiff issued a memorandum "that, since that date, has governed the circumstances in which plaintiff would be liable to its insureds for punitive damages when the liability policy was itself silent on the question." The stipulation further provides that by the end of 1973 Dow and its insurance broker "agreed that the Dow Policy would contain no reference to insurance of punitive or exemplary damages. Instead, [the broker] accepted, on Dow's behalf, plaintiff's proposal that the Dow Policy be interpreted according to the terms of the [December 15, 1971,] Memorandum." That memorandum makes clear that coverage for punitive damages will be provided, unless prohibited by local public policy, only when the insured is "vicariously assessed with punitive damages but did not itself direct or ratify the offending act" and will not be provided for punitive damages assessed because the insured "has itself performed, directed or ratified the offending act." The record adequately supports Judge Werker's finding that the punitive damages assessed by the Minnesota jury fell within the category of punitive damages for which the AIC-Dow policy, as supplemented by the December 15, 1971, memorandum, did not provide coverage.

AIC also claims that, even if the AIC-Dow policy excluded the Minnesota punitive damage award, the reinsurance agreement's "follow the fortunes" clause obliges NACPAC to reimburse AIC for its settlement on behalf of Dow. That clause provides, "All claims involving this reinsurance, when settled by the company, shall be binding on the reinsurer . . . ." According to AIC, "follow the fortunes" clauses are designed to force reinsurers like NACPAC to reimburse companies like AIC when they decide to enter into a settlement like the $500,000 settlement reached in the Minnesota case. NACPAC claims that "follow the fortune" clauses bind the reinsurer only when the reinsured settles a claim covered by the underlying policy, but not when the reinsurer makes *ex gratia* payments outside the scope of that policy. *See Insurance Co. of North America v. United States Fire Insurance Co.,* 67 Misc.2d 7, 322 N.Y.S.2d 520 (Sup.Ct. 1971), *aff'd,* 42 A.D.2d 1056, 348 N.Y.S.2d 122 (1st Dep't 1973); 13A J. Appleman & J. Appleman, *Insurance Law and Practice* § 7698, at 556 (1976) ("despite a 'follow the fortune clause,' the reinsurer is only liable for a loss of the kind reinsured").

This disagreement between AIC and NACPAC reflects the inherent tension between "follow the fortune" clauses and limitations on the liability of reinsurers. In some cases in which there is genuine ambiguity over what a settlement covers, a "follow the fortunes" clause may oblige a reinsurer to contribute to a settlement even though it might encompass excluded items. AIC claims that such an ambiguity exists in this case. It contends that it entered into a settlement not because of the Minnesota jury's award of punitive damages, but for a variety of valid business reasons, including a fear that the compensatory damage award might be increased as a result of the appeal. On the facts of this case, we reject AIC's claim. It is clear that the settlement here was primarily designed to compensate Dow for a punitive damage award that is excluded from the reinsurance policy. As the District Court found, the settlement did not compensate Dow for insured risks in an amount greater than $250,000. Under these circumstances, it would be unfair to NACPAC to hold it liable for damages beyond the scope of its policy.

AIC's final two claims concerning evidence excluded by District Court are also

without merit. First, it was not error for the District Court to refuse to admit testimony offered to prove that the evidence in the Minnesota case provided a basis on which the Minnesota jury might have awarded punitive damages because Dow officials acted with "reckless or conscious disregard for the rights of the plaintiff," rather than upon evidence of those officials' intentional misconduct. Even if the jury had relied upon evidence of reckless disregard, the punitive damages awarded against Dow would still, under Minnesota law, *see Caspersen v. Webber,* 298 Minn. 93, 213 N.W.2d 327 (1973), not have been vicariously imposed damages for which the AIC-Dow policy provided coverage. Thus, the District Court properly rejected this testimony as immaterial. AIC's second evidentiary claim involves testimony that the company sought to introduce about NACPAC's discussions with Home Insurance Company over commutation. The District Court was correct in ruling that evidence inadmissible under Fed.R.Evid. 408.

The judgment of the District Court is affirmed.