**AMERICAN MARINE INSURANCE
GROUP, Plaintiff,**

v.

**NEPTUNIA INSURANCE COMPANY,
Defendant.**

**90 Civ. 2564 (PKL).**

United States District Court,
S.D. New York.

Oct. 21, 1991.

Chalos, English & Brown, New York City, Harry A. Gavalas, William M. Cassarini, of counsel, for plaintiff.

Kirsch, Gartenberg & Howard, Hackensack, N.J., Thomas S. Howard, Holly B. Tashjian, of counsel, for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This is an admiralty action that arises out of a dispute between defendant Neptunia Insurance Company ("Neptunia"), a marine insurer, and plaintiff American Marine Insurance Group ("American Marine"), its reinsurer. American Marine has brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that it is not liable under its reinsurance contract with Neptunia. Plaintiff and defendant now cross-move the Court for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

## BACKGROUND

In 1982, Neptunia, a Swiss marine insurance company, issued a hull and machinery insurance policy to Lunmar SA ("Lunmar") to cover its vessel, the M/V SPES, for an insured value of $5.6 million. Neptunia subsequently reinsured this risk with diverse British and American reinsurers, with American Marine, a New York City based association of underwriters, accepting 6.5% of the risk. These insurance and reinsurance contracts included two provisions that form the basis for the instant dispute. Insurance for the M/V SPES was provided "warranted free from particular average absolutely," and the reinsurance contract incorporated this limitation on coverage by reference. In addition, American Marine's reinsurance obligation required plaintiff to "in all respects follow the fortunes of the Reassured and pay as may be paid in connection with the original insurance."

As a result of heavy weather encountered during a voyage from Aruba to Boston in November 1982, the M/V SPES suffered severe hull damage. Lunmar, as the owner of the vessel, subsequently made a claim for a constructive total loss under the policy. A series of contested estimates of the damage to the vessel followed, leading Neptunia to conclude that Lunmar had not adequately demonstrated that a constructive total loss had occurred. Lunmar thereafter filed a suit in the High Court of Justice in London, England, claiming a constructive total loss and seeking the full insured value of the vessel, along with interest and costs.

Based on anticipated difficulty with its case against Lunmar, and facing the possibility of a $9 million liability (including accrued interest, costs and attorneys' fees), Neptunia, in consultation with its London reinsurers, subsequently settled the claim with Lunmar for $4 million. During the course of the investigation of Lunmar's claim and the negotiation of the settlement, there was extensive contact between Neptunia and American Marine concerning the Lunmar claim. However, the parties dispute the position taken by American Marine throughout these discussions. Neptunia claims that American Marine was mindful of its obligation to participate in the settlement that was ultimately reached. In contrast, American Marine asserts that it

made clear throughout the process that it intended not to participate in any settlement with Lunmar.

Once notified of the ultimate settlement, American Marine refused to pay Neptunia the 6.5% share called for under the reinsurance policy. American Marine claims that the "free from particular average" clause in the insurance contract bars recovery for compromised total loss. Neptunia responds that compromised total loss is covered by the insurance and reinsurance contracts, and that American Marine is obligated to pay the 6.5% risk it shouldered by undertaking the reinsurance of Neptunia. Accordingly, American Marine brought this declaratory judgment action, seeking a declaration of non-liability under the policy.

## DISCUSSION

### A. *Standard for Summary Judgment*

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The substantive law governing the case identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 107 (2d Cir.), *cert. denied,* 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 325, 106 S.Ct. at 2554; *see Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir. 1991).

Once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & H. Ry. v. Consolidated Rail Co.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512–13, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or de-

feat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

## B. *Plaintiff's Motion for Summary Judgment*

■ The Court first turns to plaintiff's summary judgment motion, which claims that American Marine is not obligated to reimburse Neptunia for compromised total loss under the reinsurance policy. Plaintiff bases this claim on the inclusion of a "warranted free from particular average absolutely" clause in the reinsurance policy. *See* Affidavit of Harry A. Gavalas, Esq., sworn to on February 15, 1991, Ex. 1, at I cl. 11. In essence, plaintiff asks the Court to adopt the following chain of inferences as a matter of law: by compromising the total loss claim, Neptunia "paid for something other than a true actual or constructive loss;" this "something" was actually a partial loss, and was excluded from coverage by the "free from particular average" clause.

In appraising this motion, the Court first considers whether plaintiff has demonstrated a legal basis for the relief it seeks by examining the law governing marine reinsurance and the definitions of the terms "free from particular average" and "compromised total loss." The established definition of "average" is partial loss. *See Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 298 (2d Cir.1987) (free of particular average "coverage does not cover a partial loss of the subject matter insured"), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); Gilmore and Black, The Law of Admiralty 80 (2d ed. 1975) ("An *average* is a partial, as opposed to a *total* loss.") (emphasis in original); Mustill and Gilman, 2 Arnould's Law of Marine Insurance and Average 712 (16th ed. 1981) ("Arnould's Marine Insurance") (average "means partial loss by perils insured against"). General average is a par-

tial loss incurred to save the entire venture, with the expense repaid by contributions from all who benefitted from the loss. *See id.* at 800. Particular average is a partial loss borne solely by the owner of the property that has been damaged. *See id.* at 887.

■ The Court next considers the definition of "compromised total loss." When a marine insurer or reinsurer seeks to provide insurance covering only total loss, it can limit its exposure by using the terms actual, constructive, compromised or arranged total loss. *See Lenfest v. Coldwell*, 525 F.2d 717, 720 (2d Cir.1975). An actual total loss occurs when the vessel no longer exists or is irretrievably sunk; a constructive loss is found when the cost of repairs exceeds the repaired value of the vessel. A compromised total loss is a third type of total loss, which, predictably, results from the compromise of a claim of total loss. "Under a policy which is expressed to cover a 'compromised' ... total loss, the assured can only recover if the settlement was reached in good faith on a total loss basis, and not where the claim was settled as a partial loss." Arnould's Marine Insurance, *supra*, at 726.

The case-law supports the proposition that compromised total loss is a form of total, as distinct from partial, loss. A primary example is *Oscar L. Aronsen, Inc. v. Compton*, 370 F.Supp. 421, 422 (S.D.N.Y.1973) (Lumbard, J., sitting by designation), *aff'd*, 495 F.2d 674 (2d Cir.1974). In *Aronsen*, plaintiff settled a claim for recovery under its hull and machinery policy, and thereafter sought to recover under two anticipated charter profit policies that required an actual, constructive or compromised total loss as a condition precedent to recovery. Finding that no actual or constructive total loss had occurred, the Court was required to analyze whether there had been a compromised total loss. Because the owner had expressly settled the hull insurance claim on a partial loss basis, the Court had no difficulty finding that a compromised total loss had not occurred, and that plaintiff's coverage under the charter profit policies had not been triggered. The

English cases also treat compromised total loss as a type of total, rather than partial, loss. For example, *Street v. Royal Exchange Assurance*, 19 Com.Cas. 339 (C.A.1914), involved a hull reinsurance policy allowing recovery only if total loss were shown. *Street* found a compromised total loss, as opposed to a partial loss, and allowed the insurer to recover from the reinsurer. *Accord Gurney v. Grimmer*, 44 Ll.L.Rep. 189 (C.A.1932).[1]

■ In so holding, *Street* established a presumption that a settlement is for compromised total loss where a claim for constructive total loss is settled only after being brought to suit, and the settlement is not premised on relinquishing the constructive total loss claim. In fact, the Second Circuit adopted this presumption in *Oscar L. Aronsen, Inc. v. Compton*, 495 F.2d 674, 677 (2d Cir.1974), stating that, "we are of the view that the proper barometer for gauging the bona fide nature of the shipowner's initial claim for constructive total loss is his willingness to press that claim until settlement." In the instant case, the constructive total loss claim was brought to suit, and subsequently settled without being relinquished as a condition of settlement. Therefore, under the *Street/Aronsen* presumption, the settlement compromised the constructive total loss claim, and not a claim for partial loss.

It is thus obvious that a recovery for compromised total loss is consistent with a reinsurance policy "warranted free from particular average absolutely." Coverage "free of particular average" excludes recovery for *partial* casualty, whereas recovery for compromised total loss is, by definition, a recovery for *total* loss. Nevertheless, plaintiff's motion for summary judgment appears to rest squarely on the directly contrary position—that a recovery for compromised total loss is presumptively excluded from a policy "warranted free from particular average absolutely."

Plaintiff's argument begins by pointing out that actual, constructive and compromised total loss have long been recognized as distinct types of losses. Plaintiff then claims that, to allow recovery for compromised total loss, the reinsurance policy must have included a phrase like "warranted free from particular average absolutely, but to pay in the event of total actual, constructive or compromised total loss." However, the reinsurance policy covering Neptunia mentioned no type of total loss—actual, constructive or compromised. It only included the phrase "warranted free from particular average absolutely." The Court sees no reason to exclude compromised total loss from coverage while still including actual and constructive total loss. Were this Court to exclude all types of coverage not mentioned in the "free from particular average" clause, there could be no recovery under the insurance policy, and such a result is absurd.

For these same reasons, plaintiff's citation of Parks, *The Law and Practice of Marine Insurance and Average* (1st ed. 1987), is inapposite. Professor Parks refers to an insurance contract that includes the phrase "This insurance is against the risks of total and/or constructive total loss of vessel only—To follow original underwriters in the event of a compromised or arranged total loss being settled." *Id.* at 1139–40. Plaintiff had the right to bargain for inclusion of such a clause in this reinsurance policy, but failed to do so. Plaintiff's reference to the clause "excluding Total and/or Constructive and/or Compromised Total Loss" in the deductible schedule for Schedule I vessels, not including the M/V SPES, only demonstrates to the Court that plaintiff knew how to differentiate the diverse types of total loss when it chose to do so. There is simply no reference in the "free from particular average" clause to the distinctions among the various types of total losses, and the Court declines to rewrite the contract on plaintiff's behalf.

---

1. Plaintiff cites *Gurney* for the proposition that a compromised total loss "assumes that a mutual concession has been made by both parties and that each party has got something less than he claimed." *Gurney, supra,* 44 Ll.L.Rep. at 196. First, this language is drawn from the

concurring opinion of Lord Justice Lawrence. Second, the Lord Justice made this statement while distinguishing arranged and compromised total loss. There is no indication that the quoted language was meant to suggest that compromised total loss is actually a form of partial loss.

*See, e.g., Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir. 1990) ("In its efforts to preserve the parties' rights and the status quo, the court must be careful not to alter the terms of the agreement.").

■ Plaintiff is seeking a ruling by the Court that a "free from particular average" clause excludes recovery for compromised total loss as a matter of law. However, the weight of the law dictates the contrary result: by failing to mention any type of total loss, the "free from particular average" clause was meant to allow recovery for any type of total loss, including compromised total loss. Plaintiff has not provided any basis in law for its position that there can be no recovery for compromised total loss under a policy "warranted free from particular average absolutely." Plaintiff's motion for summary judgment is therefore denied.[2]

## C. *Defendant's Cross–Motion for Summary Judgment*

The Court next turns to consider defendant's cross-motion for summary judgment. Defendant claims that the "follow the fortunes" clause in the reinsurance contract binds plaintiff to the settlement Neptunia negotiated, and obligates plaintiff to contribute to covering the ultimate cost of that settlement. Neptunia asserts that there exist no genuine issues of material fact concerning American Marine's obligation to follow the fortunes, and that plaintiff is obligated to meet its reinsurance commitments as a matter of law.[3]

■ The follow the fortunes doctrine "burdens the reinsurer with those risks which the direct insurer bears under the direct insurer's policy covering the original insured." *Bellefonte Reinsurance Co. v. Aetna Casualty and Sur. Co.,* 903 F.2d 910, 912 (2d Cir.1990). The follow the fortunes doctrine has two primary limitations. First, the reinsurer is only required to reimburse the reinsured for the type of loss that is covered by the policy of reinsurance. *See American Ins. Co. v. North Am. Co. for Property and Casualty Ins.,* 697 F.2d 79, 81 (2d Cir.1982); 13A J. Appleman & J. Appleman, Insurance Law and Practice § 7698, at 556 (1976). Second, the reinsurer is only obligated to follow the fortunes of the reinsured up to the reinsurance liability cap. *See Bellefonte, supra,* 903 F.2d at 912–13. Even if these two threshold requirements are met, the follow the fortunes clause only binds the reinsurer where "the insurers have acted honestly and have taken all proper and businesslike steps in making the settlement." *Insurance Co. of Africa v. Scor (U.K.) Reinsurance Co.,* [1985] 1 Ll. L.Rep. 312, 330 (C.A.); *accord Insurance Co. of the State of Pennsylvania v. Grand Union Ins. Co.,* [1990] 1 Ll.L.Rep. 208 (Hong Kong C.A.) (placing burden of showing absence of honesty and businesslike conduct on reinsurer).

American Marine's opposition to Neptunia's cross-motion for summary judgment focuses on the first requirement under the follow the fortunes doctrine. American Marine insists that "Neptunia attempts to create reinsurance where none existed. As shown [by American Marine] there simply was no reinsurance provided to Neptunia for compromised total loss of the M/V SPES." Memorandum of Law in Support of Plaintiff's Motion for Summary Judg-

---

2. Moreover, even were the Court to find that an exclusion of compromised total loss can be inferred from the free from particular average clause, there would exist genuine issues of material fact precluding summary judgment. Under plaintiff's legal theory, policy coverage would attach if defendant could prove that a constructive total loss occurred. If the Court agreed with plaintiff's legal position, summary judgment would be improper because defendant would have to be given the opportunity to prove at trial that the M/V SPES suffered a constructive total loss.

3. Neptunia also argues that contractual principles of indemnity require American Marine to compensate it for the settlement. However, the Court declines to rely on this argument. Defendant has not produced any cases applying this concept in the field of United States reinsurance law. Further, the parties' use of the follow the fortunes clause indicates that they bargained concerning allocation of the reinsurance risk. In light of this bargained for contract term and the specialized nature of the reinsurance field, the Court is loathe to add provisions to the insurance policy.

ment, at 10; Rebuttal Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross–Motion ("Rebuttal Memorandum"), at 13–14.

American Marine's claim that there is no coverage for compromised total loss under the reinsurance policy is premised on the inclusion of the "warranted free from particular average absolutely" clause in the insurance and reinsurance contracts. However, this line of reasoning has been rejected. Because Lunmar's claim for constructive total loss was pressed to suit and not given up as a condition of the settlement, the claim at issue in the instant case is for compromised total loss. Further, compromised total loss is a type of total loss, which is not excluded from coverage by a "free from particular average" clause. The Court therefore holds that the compromised total loss claim was within the scope of the coverage provided by the reinsurance policy, and that American Marine is obligated to follow Neptunia's fortunes in this matter.

The Court next inquires into the existence of any genuine issues of material fact that might preclude the grant of summary judgment. Defendant correctly points out that the only material fact at issue in the instant case is whether the settlement was carried out in an honest and businesslike manner. Defendant then points to evidence demonstrating why there exists no genuine issue of fact on this question. *See* Affidavit of Simon Loftus, Solicitor, sworn to on April 8, 1991. The burden thereby shifts to American Marine, which must demonstrate that there is a genuine dispute about material facts at issue that requires a trial.

However, plaintiff has failed to carry this burden. American Marine has not pointed to any facts that demonstrate to the Court that the settlement was improper; rather, it asserts that "[t]he reasonableness of Neptunia's settlement is not in issue in this case." Rebuttal Memorandum, at 3. As this Court has explained, compromised total loss was within the scope of the reinsurance policy; for plaintiff to avoid the grant of summary judgment it must show that the settlement was unreasonable and the product of dishonesty or unbusinesslike conduct. Because plaintiff has failed to show that there exist genuine issues of material fact, defendant is entitled to judgment as a matter of law, and its cross-motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

SO ORDERED